[Crim. No. 432. Fifth Dist. June 5, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND GONZALES CUELLAR, Defendant and Appellant.

Stephan P. Galvin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—A jury found defendant guilty of a sale of marijuana in violation of Health and Safety Code section 11531, and of possession of marijuana in violation of Health and Safety Code section 11530.

David Fuentes, a senior narcotic agent with the State Bureau of Narcotic Enforcement, accompanied by a "contact" by the name of Alfonso Cintora, also known as "Chi-

co," drove to the home of Richard Garcia in Los Banos on August 17, 1966, about 8:40 p.m. A Thunderbird automobile which defendant and Frank Ramos had driven from San Jose that day, was parked in the driveway adjacent to the front yard. Garcia was standing in the yard near the car and Ramos and defendant were repairing the electrical system for the convertible top.

Garcia walked to the Fuentes automobile. Chico, who was known to Garcia, introduced Fuentes as his cousin and said that Fuentes wished to purchase a can of marijuana. Actually two packets were sold, one right after the other, and the problem in the case stems from the fact there were two sales and the testimony of Fuentes, the agent, and Garcia, the accomplice, differed as to the first sale. Fuentes testified that Garcia, after being told Fuentes wanted to buy a can of marijuana, walked past the Thunderbird, spoke to defendant and Ramos but continued walking into the house. Upon the return trip from the house he again spoke to the men as he passed them, but continued to the Fuentes car, where he delivered a waxed paper bag containing marijuana. The testimony of Garcia, who was a witness for the People, was that he obtained both waxed paper bags from defendant and Ramos.

No prosecution witness other than Fuentes testified as to the first sale, so that Garcia's testimony, rather than being corroborated, was contradicted insofar as concerns defendant's participation. As to the second sale, Fuentes and Garcia both testified substantially as follows: After Garcia handed the first packet to Fuentes, Fuentes said he wanted a second can; Garcia turned and whistled to defendant and Ramos and said "They want another can," then walked to the Thunderbird where defendant was in the car working on the electrical mechanism; defendant handed a packet to Ramos, who handed it to Garcia, who handed it to Fuentes.

Fuentes testified that after receiving the second package he paid $40 in one lump sum to Garcia, who handed the money to Ramos. Garcia, on the other hand, testified that Fuentes paid him $20 for the first packet, which money he gave to Ramos, and another $20 after delivery of the second package, which he gave to either defendant or Ramos.

No arrests were made at the time of sale, but all three men, Garcia, Ramos and defendant, were subsequently arrested and each charged with a sale of narcotics and of possession of narcotics. Garcia, who apparently pleaded guilty to possession and was given a six months' local jail sentence, testified on behalf of the prosecution. Defendant and Ramos were tried

jointly, and each was convicted on both counts. Defendant alone appeals.

The greater portion of defendant's brief is devoted to the proposition that "Health and Safety Code sections 11530 and 11531 violate the Eighth Amendment to the United States Constitution and article I section 6 of the California Constitution." He contends the penalty that may be imposed for violation of either section, particularly with a prior conviction for the same offense, is "disproportionate to his conduct no matter what the purposes of punishment are."

The point is not properly present on this appeal. First, the contention was not raised below, so there is nothing in the record to support the assertion even though it raises a constitutional question and, second, all we have in the brief is an expression of counsel's personal belief that the offenses do not endanger society to the extent that the sentences are justified. No authority is cited that purports to demonstrate the harmfulness or harmlessness of marijuana use or addiction, or the social consequences of the use of the drug. Hence we have no legal basis for even considering defendant's bald assertion that the offense is not of a heinous nature and the enormity of the crime does not justify the penalty that may be imposed pursuant to the two sections.

Several California cases have dealt with one or another aspect of the constitutionality of sections 11530 and 11531. *People* v. *Marsden*, 234 Cal.App.2d 796 [44 Cal.Rptr. 728], holds that a sentence of five years to life without possibility of parole for three years for giving away marijuana does not constitute cruel and unusual punishment. *People* v. *Keller*, 245 Cal.App.2d 711 [54 Cal.Rptr. 154], holds that the penalty prescribed for selling marijuana does not constitute cruel and unusual punishment. *People* v. *Quilon*, 245 Cal.App.2d 624, [54 Cal.Rptr. 294], holds that the penalties for possession of marijuana with prior convictions of the same offense are severe but not cruel or unusual punishment and that no denial of equal protection of the law results from the imposition of the penalty provided. *People* v. *Aguiar*, 257 Cal. App. 2d 597 [65 Cal.Rptr. 171], holds that section 11530 creates a constitutionally valid classification of a criminal act within the equal protection clause of the constitution, which is a reasonable classification free from discrimination or other "impure motive."

We note, in passing, that the Legislature is now holding hearings concerning the punishment for the possession of, use

of, and trafficking in marijuana. This is where the matter of proper penalty should be determined, since this court is in no position to hold hearings and take evidence bearing on the controversial question of the effect marijuana has upon the individual and upon society.

We turn to defendant's contention that the court erred in failing to instruct the jury concerning accomplices. Garcia was, as a matter of law, an accomplice, and it was incumbent upon the trial court *sua sponte* to so instruct the jury. (*People* v. *Jones,* 228 Cal.App.2d 74, 94 [39 Cal.Rptr. 302].) It follows that the court erred, also, in not giving an instruction embodying the substance of Penal Code section 1111, which provides that a conviction cannot be had upon the uncorroborated testimony of an accomplice. This instruction must be given *sua sponte* when it is clear that a witness is an accomplice, as here, and testifies for only the prosecution. (*People* v. *Warren,* 16 Cal.2d 103, 116 [104 P.2d 1024]; *People* v. *Bevins,* 54 Cal.2d 71, 76 [4 Cal.Rptr. 504, 351 P.2d 776].)

Additionally, where an accomplice is not called as a witness by the defendant, the court should instruct the jury that the testimony of an accomplice "ought to be viewed with distrust." Although this instruction, formerly embodied in Civil Code section 2061, was not reenacted in the Evidence Code, it is nonetheless required, when applicable, under decisional law. (*People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873]; *People* v. *Barclay,* 40 Cal.2d 146, 153 [252 P.2d 321] (overruled on another point in *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr 201, 388 P.2d 33, 12 A.L.R.3d 810]); Fricke & Alarcon, Cal. Criminal Procedure (7th ed.) p. 373.)

The People argue that not every failure to instruct on accomplices is reversible error. While there are cases holding that failure to instruct upon the import of Penal Code section 1111 does not, per se, require a reversal, such cases also hold that the particular record must reflect that the testimony of the accomplice is fully corroborated and there is no reasonable likelihood that the jury could have convicted the defendant upon the uncorroborated testimony of an accomplice. (*People* v. *Hamilton, supra,* 33 Cal.2d at p. 51; *People* v. *Diaz,* 208 Cal.App.2d 41, 45 [24 Cal.Rptr. 887].)

Applying these principles to this case, we find that Garcia, the accomplice, testified that defendant gave him both packets of marijuana which he delivered to Fuentes. The undercover agent, Fuentes, corroborated one sale, that is, the transfer of possession of the second packet; he did not see defendant

deliver the first packet to Garcia. As an undercover agent and the only law enforcement officer present, Fuentes was intensely interested in the entire transaction. He testified that he watched Garcia closely ''for something like this'' but he did not see defendant participate in the sale of the first packet.

Thus we have two sales, one corroborated by the undercover agent and the other wholly uncorroborated. No distinction was made by the prosecution or the trial court between the two sales and the physical delivery of two different packets. The information charged one sale, and the form of verdict submitted to the jury specified one sale. Although the prosecution is not required to set out each sale as a separate count (Pen. Code, § 954; Witkin, Cal. Criminal Procedure (1963) pp. 192-197) such specificity would have cured the uncertainty here. Had each sale been separately stated and each count distinguished in the jury verdict forms, at least the second sale would stand as a separate corroborated sale. Had the jury been instructed that all 12 jurors must agree on the particular sale, we would be in a position to give consideration to the People's argument that the jurors must be presumed to have agreed upon the sale that was corroborated. But as the record stands, we have no way of knowing which sale each juror had in mind in finding defendant guilty of *a* sale.

The People argue that the two sales constitute a single transaction and Fuentes' corroboration of the one sale is sufficient. This argument fails to meet the requirements of Penal Code section 1111, for if both sales are considered a single transaction there was only partial corroboration. The principal reason the single transaction theory is inapplicable to the facts of this case is that the defendant could have been prosecuted for making two sales. Garcia made two trips to deliver two separate packets, each for a separate consideration of $20.

For the reasons expressed above, we conclude it was reversible error for the court to fail to instruct the jury *sua sponte* that Garcia was an accomplice as a matter of law, that a conviction cannot be had upon the uncorroborated testimony of an accomplice, and that the testimony of Garcia, the accomplice, who did not testify for the defense, was to be viewed with distrust.

The judgment is reversed.

Conley, P. J., and Gargano, J., concurred.