### STATE of Maine

### v.

### Joseph B. SHAW.

Supreme Judicial Court of Maine.

Aug. 11, 1975.

---

Thomas E. Delahanty II, Dist. Atty., Coleman G. Coyne, Jr., Asst. Dist. Atty., Auburn, for plaintiff.

John L. Hamilton, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

Joseph B. Shaw was indicted for selling cannabis in violation of 22 M.R.S.A. § 2384.[1] Having waived trial by jury, the case was presented to a single Justice of the Superior Court who found the defendant guilty and sentenced him accordingly. We deny the appeal from that judgment.

A motion for discovery had been filed in which Shaw sought to obtain a sample of the substance claimed to be cannabis for the purpose of an independent analysis by a defense expert, Professor Richard E. Schultes,[2] "in a laboratory of his choice." The Court, *assuming* the defense expert to be a "chemist," authorized the independent analysis but restricted it to the Maine State Public Health Laboratory in Augusta, specifically ordering that no substances be removed therefrom and that the results "of any and all tests" be made available to the State. No objection was made to the form of the discovery order.

The defendant also moved and was granted the right to take the deposition of Professor Schultes.

The record on appeal was abbreviated by an agreed statement of facts which admitted (1) the sale, and (2) a test performed by a State chemist identified the substance as cannabis. It was further agreed that, although the State chemist did not share the view that there was more than one species of the genus cannabis, he had testified, assuming the contrary, that his tests would not distinguish between species since "all varieties [species] have the same tetrahydrocannabinol [THC]."

The deposition of Professor Schultes was properly taken but it was not admitted in evidence before the single Justice who ruled:

"Now, Defendant's Exhibit 4 for identification, which is the deposition of Richard Schultes . . . . [which] would be to the effect there is more than one type of the plant, the genus cannabis and, I gather, that you cannot distinguish by chemical analysis Sativa–L or other types of genus cannabis. Is that the testimony?

---

1. "Whoever sells, exchanges, delivers, barters, gives or furnishes or possesses with intent to sell, exchange, deliver, barter, give or furnish Cannabis, Mescaline or Peyote, to any person shall upon conviction thereof be punished . . . ."

2. Professor Schultes is the Mangelsdorf Professor of Natural Sciences and Director of the Botanical Museum at Harvard University, having obtained Baccalaureate, Masters and Doctor of Philosophy degrees from Harvard University, concentrating in taxonomic botany.

MR. FALES: We prefer the word species.

THE COURT: All right, species. That being the essence of Dr. Schultes' testimony and this Court construing our Statute in the State of Maine as proscribing cannabis in all its varieties, types and species. I consider the testimony to be irrelevant and therefore Defendant's Exhibit 4 will not be received in evidence. The objection will be sustained.

MR. FALES: Please the Court, it is our understanding it is preserved, however, as part of the record?

THE COURT: It is marked as an exhibit in the record, not received in evidence."

■ Initially, we are urged to hold that it was manifest error to limit the analysis requested by the defendant to one which must necessarily be made in the State laboratory. Rule 52(b), M.R.Crim.P. In ruling on this motion the Justice *assumed* (and no facts contrary to that assumption were made known to him) that the analysis requested was to be done by an expert qualified in the field of chemical analysis. Although Professor Schultes was familiar with the type of chemical tests necessary to identify cannabis, he himself held no degrees in chemistry, had never personally performed such tests, and did not pretend to be qualified to do so. It was his deposed testimony that although there are three species of the genus cannabis, all chemically identified by the presence of THC, such tests cannot distinguish between the species. Additionally, if any one species has lost its forensic characteristics by age, drying, or fragmentation, its identification by a taxonomist becomes impossible. With particular reference to the exhibit involving this defendant, Professor Schultes stated:

"It is not possible to distinguish specie. I can say that it is cannabis. The distin-

guishing characteristics have disappeared or are not present. The material is old, dried and a great deal fragmented."

We reject appellant's belated challenge to the restrictive nature of the Justice's order. Even if we assume that it was error to limit the place and scope of the requested analysis, viewed in retrospect this error becomes harmless because (1) Professor Schultes is not a qualified chemist, and (2), as a taxonomist he would have been unable to identify what species was contained in the exhibit in any event. Thus, on these facts the defendant has not shown that the restrictive order was in any respect unreasonable or prejudicial. We reaffirm the ad hoc standard of reasonableness approved in *State v. Cloutier,* 302 A. 2d 84 (Me.1973), dealing with the scope of discovery and inspection orders issued pursuant to Rule 16(a), M.R.Crim.P.

■ The real issue which is urged on appeal is that 22 M.R.S.A. § 2384, proscribing the sale of cannabis, is limited by 22 M.R.S.A. § 2382(1), which provides:

"1. Cannabis. 'Cannabis,' sometimes called marijuana or marihuana, includes all parts of the plant Cannabis sativa L., whether growing or not . . . . 'Cannabis' shall be taken to include any synthetic substitute for such substance or any salts, compounds, derivatives or preparations thereof."

Appellant argues that Section 2384 is violated only if the State proves a sale of the species "Cannabis sativa L" and, therefore, Professor Schultes' deposition was improperly excluded since it was relevant evidence tending to cast a reasonable doubt on the illegality of the alleged sale. If, as the Professor deposed, the genus cannabis is polytypic, having at least two species extant in addition to sativa L, and since all species contain THC making chemical identification of a particular species impossible by the testing methods utilized by the State chemist, the prosecution is thus ham-

strung in its effort to prove a violation of this statute.

Did the legislature intend to criminalize only the sale of the species "Cannabis sativa L" or did it intend to proscribe the sale of all species of cannabis? We approach this issue by giving the statutes "that reasonable construction which men of common intelligence would readily ascribe to the legislation." *State v. Davenport,* 326 A.2d 1, 6 (Me.1974).

Although the precise issue here raised was not specifically dealt with in *State v. Alley,* 263 A.2d 66 (Me.1970), Mr. Justice Marden, speaking for the Court, did recognize that "marijuana" and "cannabis" are synonymous terms descriptive of a drug produced from the foliage of the hemp plant, and commented, "there can be no cannabis sativa L without cannabis." *Id.* at 69.

The language of Section 2382(1) originally was adopted in 1941. P.L.1941, ch. 251, § 1. The legislature has never deemed it necessary in the intervening years to deviate from this phraseology. It is clear that the "scientific community in this country did not become aware of the possible polytypical status of marijuana until the late 1960's." *United States v. Walton,* 514 F.2d 201 (D.C.Cir.1975).[3] The legislature, considering its general enactments in the area of illicit drugs, has demonstrated a definite purpose of prohibiting all but the scientifically or medically necessary use of narcotics. Common sense dictates that it would never be so irrational as to legalize the sale of one species of cannabis, while proscribing the sale of another, both equally potent in terms of THC, the euphoriant element of marijuana.

Chief Judge Bazelon in *Walton, supra,* has pointed out the "absurd consequences" which would follow if the so-called "spe-

cies defense" were found to be legally valid. We agree, thus joining the great majority of jurisdictions which have met this issue.

The entry is

Appeal denied.

DELAHANTY, J., did not sit.

---

3. Professor Schultes confirms this conclusion. His deposition points out that the "L" in "Cannabis sativa L" refers to an early botanist, Linnaeus, who, in 1753, used this botanical term as generally descriptive of the genus cannabis. He agrees that the monotypic nature of cannabis was "generally accepted" until at least 1969.