STATE of Maine

v.

Patrick DONOVAN.

Supreme Judicial Court of Maine.

Sept. 29, 1975.

Thomas E. Delahanty II, Dist. Atty., Coleman G. Coyne, Jr., Asst. Dist. Atty., Auburn, for plaintiff.

Platz & Thompson by Philip K. Hargesheimer, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The defendant, Patrick Donovan, was indicted by the Androscoggin grand jury, in successive counts, for the sale and the attempted sale of Cannabis in violation of 22 M.R.S.A. § 2384. The persons to whom the indictment charged the defendant with selling and attempting to sell Cannabis were the police officers working as undercover agents for the Androscoggin Regional Special Investigations Unit. The case was tried by jury on October 1, 1974 at the Androscoggin Superior Court. The defendant's motion for acquittal on the second count of the indictment was granted at the conclusion of the State's case. The jury returned a verdict of guilty on the first count of the indictment charging sale.

The jury could have found these facts:

On October 24, 1973, at his apartment in Lewiston, defendant agreed to sell two pounds of Cannabis to the two undercover agents. The officers returned to the defendant's apartment at about 6 p.m. on the following day where defendant gave them a shopping bag containing two plastic bags of Cannabis, which one of the officers carried out of the apartment and placed in

the trunk of the automobile. Detective Perham, head of the Lewiston Police Department's Narcotic Division, observed this from a car parked directly behind the officer's automobile. Shortly thereafter, the officers left the defendant's apartment and drove to a nearby motel. In their motel room, the undercover officers marked the shopping bag and the plastic bags with their initials and with a notation of the time and place of the sale. All the bags were then turned over to Detective Perham, who had followed the officers back to their motel. Detective Perham returned to the police station and placed the two plastic bags in a safe. On November 2, both bags were given to a State chemist who analyzed the contents as Cannabis.

On appeal, defendant raises the following points:

(1) Because the indictment charged the defendant with the sale of Cannabis and not with the sale of Cannabis sativa L., it failed to charge an offense and the trial court therefore erred in denying defendant's motion to dismiss it;

(2) 22 M.R.S.A. § 2384 is unconstitutionally vague because the statute is unclear as to the type of Cannabis prohibited;

(3) The trial court erred in denying defendant's motion for appointment of an expert witness whose testimony would tend to establish the existence of several types of Cannabis;

(4) The trial court erred in admitting the Cannabis into evidence because the State did not prove that the substance was Cannabis sativa L.;

(5) and (6) The trial court erred in denying the defendant's motion for acquittal at the conclusion of the State's case and again at the conclusion of all the evidence because there was no evidence that the substance sold by the defendant was Cannabis or Cannabis sativa L.;

(7) 22 M.R.S.A. § 2384 unconstitutionally denies due process and equal protection of the laws;

(8) The substance sold by the defendant was erroneously admitted into evidence because no chain of custody was established;

(9) 22 M.R.S.A. § 2384 unconstitutionally provides cruel and unusual punishment;

(10) The trial court erred in ordering the results of tests performed by an independent chemist be made available to the State's attorneys.

Points 1–6 are interrelated, being bottomed upon defendant's assertion that 22 M.R.S.A. § 2384 proscribes the sale of only Cannabis sativa L., but does not prohibit traffic in other types of marijuana. In support of this contention, defendant cites the definition of "Cannabis" in 22 M.R.S.A. § 2382(1) which reads in part:

"1. Cannabis. 'Cannabis,' sometimes called marijuana or marihuana, includes all parts of the plant Cannabis sativa L., whether growing or not . . .."

Thus, the defendant argues, the statutory language, by identifying a specific type of Cannabis, bespeaks a legislative intent to exclude all other species from the statutory prohibition.

We resolved this issue recently in *State v. Shaw*, Me., 343 A.2d 210 (1975) after the Court had had the benefit of this defendant's brief and argument on the issue as well as those of the defendant Shaw. *Shaw* involved the precise issue now urged by this defendant, and its decision squarely holds that the legislature, in enacting 22 M.R.S.A. § 2384, intended to proscribe the sale of *all* species of Cannabis. In examining the probable intent of the legislature, the *Shaw* Court noted:

"The legislature, considering its general enactments in the area of illicit drugs, has demonstrated a definite purpose of

**404**

prohibiting all but the scientifically or medically necessary use of narcotics. Common sense dictates that it would never be so irrational as to legalize the sale of one species of cannabis, while proscribing the sale of another, both equally potent in terms of THC, the euphoriant element of marijuana."

The Court's construction of 22 M.R.S.A. § 2384 in *State v. Shaw* is therefore dispositive of defendant's points 1–4:

 The indictment need charge no more than the sale of Cannabis. As the statute prohibits the sale of all types of Cannabis, it does not appear that the testimony of the expert witness as to the existence of several types of Cannabis would have been material to the issue being tried even if relevant. *See United States v. Rothberg,* 351 F.Supp. 1115 (E.D.N.Y. 1972). We find no unconstitutional vagueness resulting from the fact that Cannabis is defined (22 M.R.S.A. § 2382(1) ) as specifically *including* "sativa L.". Moreover, the use of the generic term "marijuana" in section 2384 is sufficiently informative to a person of "common understanding" (the constitutional standard by which the precision of criminal statutes is measured) to clearly describe the substance prohibited. *State v. Alley,* Me., 263 A.2d 66 (1970).

 The trial court did not err in denying defendant's motion for appointment of an expert witness whose testimony would tend to prove the polytypicality of Cannabis. Because section 2384 proscribes the sale of *all* species of marijuana, such testimony would have been irrelevant and was properly excluded. *See United States v. Rothberg, supra.*

 Points 5 and 6 raise separate issues. In addition to his contention that the State failed to identify the substance sold by him as Cannabis sativa L., defendant challenges the sufficiency of the State's evidence in proving that the substance was Cannabis. Although this motion was made at the close of the State's case, it was renewed at the close of all evidence and, hence, preserved. *State v. York,* Me., 324 A.2d 758 (1974). Once, however, his motion is overruled and the defendant presents evidence in his own behalf, the issue on appeal is whether the *total* evidence is sufficient to justify a conviction. *State v. Hanson,* Me., 331 A.2d 375 (1975).

The State's principal evidence on the identity of the substance in question was the testimony of William Blake, a chemist employed by the Public Health laboratory. Mr. Blake performed four separate tests on the Cannabis; a thin layer plate test; a modified Duquenois test; and two microscopic examination tests. Based upon the results of these tests, the witness testified that it was his opinion that the substance examined was Cannabis.

Because, upon cross-examination, the witness testified that no single test by itself is sufficient to make a conclusive identification and because the witness was unable to state positively whether the specimen of Cannabis against which the evidence was compared was in perfect condition, defendant contends that a reasonable jury could not conclude that the substance in question was Cannabis.

 Defendant does not contest the witness's qualifications as an expert; his contentions go only to the probative value of that witness's testimony. The defendant did not, however, introduce any evidence suggesting that the tests used by the expert were not valid methods for identifying Cannabis. At least one of these tests, the modified Duquenois, has been recognized as a standardized chemical procedure by this Court. *State v. Carvelle,* Me., 290 A.2d 190 (1972). When an expert uses established chemical procedures with which he has become familiarized by training and experience, the effect of his testimony is a matter for jury evaluation. *State v. Appleton,* Me., 297 A.2d 363 (1972).

██ ██ Defendant further argues that his motion for acquittal should have been granted at the conclusion of the evidence because no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt. Defendant bases this contention upon the fact that his testimony directly contradicted that of the two undercover agents. The weight and credibility of witnesses' testimony, however, is a matter for jury resolution and that determination will not be disturbed unless there is insufficient evidence to justify the verdict. *State v. Worrey,* Me., 322 A.2d 73 (1974).

██ The seventh point raised by defendant is that 22 M.R.S.A. § 2384 denies due process and equal protection of the laws. In his brief defendant does not attempt to differentiate between these issues but presents issues appropriate only to an equal protection argument. This opinion, therefore, addresses only equal protection. The equal protection clause measures the rationality of statutory classifications and is offended only if those classifications rest on grounds wholly irrelevant to the protection of the public health, safety, morals or welfare. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *State v. Rush,* Me., 324 A.2d 748 (1974).

██ Laws duly enacted by the legislature are presumed constitutional and, hence, their unconstitutionality must be clearly demonstrated by those who challenge them. *Donahue v. City of Portland,* 137 Me. 83, 15 A.2d 287 (1940). Defendant argues that the regulation of Cannabis in a substantially different manner than the regulation of alcohol and tobacco, both of which, he claims, are no less dangerous than Cannabis, is without a rational basis and is therefore offensive to the equal protection clause. Defendant, however, does not sustain his burden on this issue.

First, he relies on *People v. Sinclair,* 387 Mich. 91, 194 N.W.2d 878 (1972), and *Peo-*

*ple v. McCabe,* 49 Ill.2d 338, 275 N.E.2d 407 (1971) to support his contention. Yet both these cases are inapposite. The issue addressed by these cases was whether Cannabis could constitutionally be classified as a hard or narcotic drug with heroin, cocaine or morphine for the purpose of imposing penalties. They did not decide the issue raised here, which is whether the State has the power to enact laws prohibiting the sale of Cannabis. Moreover, the type of regulatory scheme enacted in this state is not within the purview of these decisions. The sale of hard or narcotic drugs is regulated by 22 M.R.S.A. §§ 2361–2380. The sale of Cannabis is treated separately in section 2384 which prescribes significantly milder penalties for its violation. Finally, even if these cases were apposite here, their value as precedent is uncertain because they represent a distinctly minority view. See *contra, United States v. Kiffer,* 477 F.2d 349 (2d Cir. 1973); *State v. Wadsworth,* 109 Ariz. 59, 505 P.2d 230 (1973); *People v. Summit,* 517 P.2d 850 (Colo.1974); *Kreisher v. State,* 319 A.2d 31 (Del.Supr.1974); *State v. Kantner,* 53 Haw. 327, 493 P.2d 306 (1972) (*cert. denied* 409 U.S. 948, 93 S.Ct. 287, 34 L.Ed.2d 218); *Commonwealth v. Leis,* 355 Mass. 189, 243 N.E.2d 898 (1969); *State v. Nugent,* 125 N.J.Super. 528, 312 A.2d 158 (1973).

Secondly, defendant produces no evidence to support his contention that treating the sale of marijuana in a different manner than the sale of alcohol or tobacco is without a rational basis. Moreover, courts that have had the benefit of evidence on the issue have upheld the prohibition of the sale of marijuana. The equal protection requirement applied by these courts was a test of minimal rationality which voids a statutory classification only if it is without any rational basis. *E. g., Lindsley v. Natural Carbolic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). The rationale most commonly voiced by these courts was that less is known about the long-term effects of marijuana than is

known about the long-term effects of alcohol. Dissimilar treatment is therefore justified, at least until scientific evidence conclusively establishes the long-term effects of marijuana. *State v. Kantner, supra; State v. Wadsworth, supra; Commonwealth v. Leis, supra.* Indeed, even if the dangers attendant upon the use of marijuana were proven to be no greater than those of alcohol, such evidence would not necessarily prevent the State from regulating one and not the other. The State is not constitutionally compelled to regulate *all* harmful substances. *United States v. Kiffer, supra.*

The defendant's eighth point is that the marijuana was erroneously admitted into evidence because the State did not establish a continuous chain of custody. Defendant claims that the evidence was not continuously in the sight and possession of the undercover agents. Yet uncontroverted testimony shows that as soon as the agent received the evidence from the defendant he removed it from the defendant's apartment and placed it in the trunk of his car. This car was at all times within the sight of Detective Perham who testified that no one approached the car after the evidence was secured. Detective Perham and the agents then drove to a nearby motel where the evidence was initialed and given to Detective Perham who returned to his office and placed the evidence in a safe to which only he and Sergeant Dehetre had access. Sergeant Dehetre subsequently removed the evidence from the safe in order to transport it to the state laboratory where he personally handed it to William Blake, the chemist who analyzed the evidence. Mr. Blake locked the evidence in a cabinet to which only he and other employees of the Public Health laboratory had access. When the evidence was not being tested, it remained in the cabinet until it was brought to Court on the day of trial. From this summary, it is clear that the evidence was at all times under the control of either the agents, the detectives or the chemist. It was properly admitted. *State v. Girard,* Me., 283 A.2d 462 (1971). The evidence need not be continually in the

personal possession of the witnesses for a proper chain of custody to be established. *State v. Cress,* Me., 344 A.2d 57 (1975); *State v. Lafferty,* Me., 309 A.2d 647 (1973) (evidence sent through the mails and received by the correct addressee); *State v. Carvelle,* Me., 290 A.2d 190 (1972) (evidence in plain view of policeman while he left it unattended in an automobile).

The defendant further contends that the car trunk may have contained other marijuana which was accidently given to Detective Perham under the misapprehension that it was the substance sold by the defendant. Defendant offered no evidence to substantiate his speculation. The State is not required to negative every possibility conceived by defendant which, had it occurred, would render the evidence inadmissible. See *State v. Carvelle, supra.*

Defendant's ninth point is that 22 M.R.S.A. § 2384 imposes cruel and unusual punishment because Cannabis is no more dangerous a substance than alcohol. Defendant's contention appears to be that *any* punishment for the sale of marijuana is cruel and unusual. Defendant submits no evidence to support this argument which is very similar to the points raised in defendant's equal protection argument. As noted above, no court to which scientific evidence has been submitted has supported the position maintained by the defendant. At least one court has determined that the legalization of marijuana would be inappropriate until the development of an easily applied test to detect intoxicated drivers and until a system of control is established to keep marijuana out of the possession of minors. *United States v. Kiffer, supra.* These concerns are indications of the types of threats posed to the public safety by the unrestricted use of marijuana. A penalty which bears a rational relation to a valid public policy will be given full effect. See *State v. King,* Me., 330 A.2d 124 (1974), recognizing the right of the legislature to establish a mandatory sentence for traffic in certain illicit drugs.

On February 28, 1974, the Court granted the defendant's motion allowing independent chemical analysis of the substance in question. Defendant's final point on appeal is that by ordering that the results of those tests be made available to the State's attorney, the Court made an order of discovery which is not authorized by law. However, the claimed unauthorized nature of this order was not brought to the attention of the Justice in the Superior Court and may not now be raised for the first time on appeal. *Cunningham v. State*, Me., 295 A.2d 250 (1972). Moreover, because the record does not show that the defendant ever made the results available to the State, there is no indication of any "serious prejudice tending to produce manifest injustice" which would entitle the defendant to relief under the manifest error principle. M.R.Crim.P., Rule 52(b); *State v. Collins*, Me., 297 A. 2d 620, 631 (1972).

The entry will be:

Appeal denied.

DELAHANTY, J., did not sit.

All Justices concurring.