[Civ. No. 45596. First Dist., Div. Four. Nov. 30, 1979.]

NATIONAL ORGANIZATION FOR THE REFORM OF
MARIJUANA LAWS et al.,
Plaintiffs and Appellants, v.
CHARLES GAIN, as Chief of Police, etc., et al.,
Defendants and Respondents;
EVELLE J. YOUNGER, as Attorney General, etc., Intervener
and Respondent.

588

COUNSEL

Mark I. Soler for Plaintiffs and Appellants.

George Agnost, City Attorney, Steven A. Diaz and Daniel E. Collins III, Deputy City Attorneys, for Defendants and Respondents.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins, Eugene W. Kaster and Dane R. Gillette, Deputy Attorneys General, for Intervener and Respondent.

OPINION

POCHÉ, J.—This is a many-faceted attack on those California Health and Safety Code sections which prohibit the private possession and use of marijuana by adults. It takes the form of a petition for declaratory and injunctive relief brought by the National Organization for the Reform of Marijuana Laws (hereafter NORML) and 32 individual taxpayers against the Chief of Police, City Attorney, Sheriff and District Attorney of San Francisco. After the complaint had been amended once, the Attorney General intervened. He then moved for summary judgment. This appeal tests his success.

The first amended complaint alleged that the statutes in question[1] violated appellants' constitutional rights of privacy, equal protection, due process, liberty, pursuit of happiness, and protection against cruel and unusual punishment. In granting summary judgment the trial court necessarily determined that there were no triable issues of fact (Code Civ. Proc., § 437c) and that, as a matter of law, none of these rights was violated by the statutes in issue.

---

[1]The amended complaint states: "the following provisions of the Health and Safety Code, as amended by Senate Bill 95, Stats. 1975, ch. 288, pp. 553 et seq., effective January 1, 1976, and as the same may be hereafter amended, and their statutory predecessors, are unconstitutional on their face and as applied to private possession and use of marijuana by adults:

"a) Section 11054 (d)(10), which includes 'marijuana,' as defined in section 11018, among 'controlled substances' listed in Schedule I, which substances may be referred to as 'narcotics' by reference in any provision of law outside of Division 10 of the Health and Safety Code, the Uniform Controlled Substances Act, pursuant to the provisions of section 11032.

## Right of Privacy

In their first cause of action, appellants allege that the marijuana statutes violate their federal and state constitutional right of privacy.

---

"b) Section 11357 (a), which provides that 'every person who possesses any concentrated cannabis shall be punished by imprisonment' for up to five years.

"c) Section 11357 (b), which provides that 'every person who possesses not more than one...ounce of marijuana other than concentrated cannabis, is guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars ($100).'

"d) Section 11357 (c), which provides that 'every person who possesses more than one ...ounce of marijuana, other than concentrated cannabis, shall be punished by imprisonment' for up to six months or by a fine of up to $500, or both.

"e) Section 11358, which provides, '(a) Every person who plants, cultivates, harvests, dries, or processes any marijuana or any part thereof...shall be punished by imprisonment' for up to 10 years, with a one-year minimum sentence before eligibility for parole; and upon proof of one of the designated prior felony convictions, for up to 20 years, with a two-year minimum sentence before eligibility for parole, and upon two or more of such prior felony convictions, for up to life imprisonment, with a five-year minimum before eligibility for parole.

"f) Section 11359, which provides, 'Every person who possesses for sale any marijuana...shall be punished by imprisonment' for not less than two years or more than 10 years with a two-year minimum before eligibility for parole; and upon proof of one designated prior felony conviction, for not less than 5 years or more than 15 years, with a three-year minimum sentence before eligibility for parole; and upon proof of two or more prior convictions, for ten years to life with a six-year minimum before eligibility for parole.

"g) Section 11360 (a), which provides, 'Except as provided by this section [in 11360(c), below, relating to not more than one ounce of marijuana other than concentrated cannabis]...every person who transports, imports into this state,...furnishes, administers, or gives away, or offers to [do those acts], or attempts to import into this state or transport any marijuana shall be punished by imprisonment' for up to life upon the first conviction, with a three-year minimum before eligibility for parole; and upon proof of one of the designated prior felony convictions, for up to life, with a five-year minimum before eligibility for parole; and upon two or more of such prior felony convictions, for up to life, with a ten-year minimum before eligibility for parole.

"h) Section 11360 (c), which provides, 'Every person who gives away, offers to give away, transports, offers to transport, or attempts to transport not more than one ...ounce of marijuana, other than concentrated cannabis, is guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars ($100).'

"i) Section 11366, which provides, '(a) Every person who opens or maintains any place for the purpose of unlawfully...giving away, or using any controlled substance which is (1) specified in...paragraph (10)...of subdivision (d) of Section 11054 [marijuana]...shall be punished by imprisonment' for up to 10 years upon the first conviction; and upon proof of one of the designated felony convictions, for up to 20 years.

"j) Section 11369, which provides, 'When there is reason to believe that any person arrested for violation of Section...11357, 11360...[or] 11366...may not be a citizen of the United States, the arresting agency shall notify the appropriate agency of the United States having charge of deportation matters.'

"k) Section 11590, which provides, '(a) Any person who...is convicted of any offense as defined in Section 11357 [(a) only], 11358, 11360 [(a) only] [or] 11366...shall

On appeal, they rely only on the protection of the California Constitution.[2]

By constitutional amendment in 1974, the right of privacy achieved the status of an "inalienable right." Article I, section 1 now reads: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness and privacy." A definitive map detailing the outside dimensions of this amendment's protections has not yet been published by the California courts. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542, P.2d 977]; see *People* v. *Privitera* (1979) 23 Cal.3d 697, 711 [153 Cal.Rptr. 431, 591 P.2d 919] (Bird, C. J., dis. opn.: "The right of privacy is a concept of as yet undetermined parameters.") However, we have learned enough from the first sketchings (*People* v. *Privitera, supra*) to disagree with respondent's opinion that the right is limited to protection from governmental snooping.

*People* v. *Privitera, supra*, determined only that the right under consideration does not encompass "a right of access to drugs of unproven efficacy" in the treatment of terminal cancer. (23 Cal.3d at p. 709.) Although the majority there also noted that the "principal objective" of the constitutional amendment was to restrain information activities of government and business, the decision does not purport to constrain the application of this constitutional protection to such cases. (*Id.*, at pp. 709-710.)

---

within 30 days...of his coming into any country or city...in which he resides or is temporarily domiciled for such length of time, register with the chief of police....'

"(l) Section 11591, which provides, 'Every sheriff or chief of police, upon the arrest ...of any school employee [for any offense defined in sections 11357 (a), 11358, 11360 (a) or 11366], shall...immediately notify by telephone the superintendent of schools ...[or] the private school authority employing such teacher [and give such written notice as well].'

"m) Sections 11350 (d)(1), 11351 (d)(2), 11352 (d)(2), 11353 (d)(2), 11354 (c)(2), 11355, 11359 (d)(2), 11360 (b)(2), 11361 (d)(2), 11363 (c)(2), 11366 (c)(2), 11370 (c)(1), 11371, 11378 (d)(1), 11379 (d)(1), 11380 (d)(1), 11470, 11475, 11476, 11570, and other sections of the Health and Safety Code, sections 12809 (f) and 13202 (a) and (b) of the Vehicle Code and other statutes, which provide, in general, for increased terms of imprisonment, forfeitures and collateral burdens."

[2]We note that federal statutes prohibiting possession of marijuana were upheld under a federal right of privacy attack in *Louisiana Af. of Nat. Or. for Ref. of Marijuana Laws* v. *Guste* (E.D.La. 1974) 380 F.Supp. 404, 406-407, affirmed (5th Cir. 1975) 511 F.2d 1400, certiorari denied (1975) 423 U.S. 867 [46 L.Ed.2d 96, 96 S.Ct. 129].

The holding in *Privitera* is that the California constitutional right of privacy does not grant terminally ill cancer patients the right of access to a drug which is of debatable merit but which they and their doctors believe may alleviate suffering and prolong life. In our judgment, it follows that the right of privacy does not guarantee adult Californians the privilege of smoking a possibly harmful drug, even in the privacy of their homes. (See *People* v. *Davis* (1979) 92 Cal.App.3d 250 [154 Cal.Rptr. 817].)

Appellants rely heavily on the Alaska Supreme Court case of *Ravin* v. *State* (Alaska 1975) 537 P.2d 494. There the possession and use of marijuana in the home was held to be protected by the right of privacy contained in the Alaska Constitution, article I, section 22: "The right of people to privacy is recognized and shall not be infringed." That decision treats the right of privacy in the home as including the right to possess and ingest marijuana in a purely personal, noncommercial context. (*Id.*, at p. 504.) Apparently Alaska stands alone. (See, e.g., *State* v. *Murphy* (1977) 117 Ariz. 57 [570 P.2d 1070, 1072]; *Marcoux* v. *Attorney General* (Mass. 1978) 375 N.E.2d 688, citing at p. 691 the following cases: "*United States* v. *Drotar*, 416 F.2d 914 (5th Cir. 1969), vacated on other grounds, 402 U.S. 939, 91 S.Ct. 1628, 29 L.Ed.2d 107 (1971); *State* v. *Murphy*, 117 Ariz. 57, 570 P.2d 1070 (1977); *Laird* v. *State*, 342 So.2d 962 (Fla. 1977); *Blincoe* v. *States*, 231 Ga. 886, 204 S.E.2d 597 (1974); *State* v. *Renfro*, 56 Haw. 501, 542 P.2d 366 (1975); *State* v. *Kells*, 199 Neb. 374, 259 N.W.2d 19 (1977); *State* v. *Anderson*, 16 Wash.App. 553, 558 P.2d 307 (1976".) We find no violation of the California right of privacy in the mere statutory proscriptions which are challenged here.

### Equal Protection

Secondly, appellants contend that the marijuana laws violate their right to equal protection of the laws because other substances such as alcohol and tobacco are not illegal. This contention was rejected in *People* v. *Aguiar* (1968) 257 Cal.App.2d 597, 604 [65 Cal.Rptr. 171]. Other federal and state courts have consistently taken a similar position. (See, e.g., *United States* v. *Kiffer* (2d Cir. 1973) 477 F.2d 349, 355; *State* v. *Renfro, supra,* 56 Hawaii 501 [542 P.2d 366, 369-370].)

The mere fact that the Legislature has chosen to prohibit one dangerous product such as marijuana, does not compel it to regulate or prohibit all such substances. (*United States* v. *Kiffer, supra,* 477 F.2d

349.) It is generally accepted that the state will normally be given "the widest discretion" in "determining whether to attack some, rather than all, of the manifestations of the evil aimed at...." (*McLaughlin* v. *Florida* (1964) 379 U.S. 184, 191 [13 L.Ed.2d 222, 228, 85 S.Ct. 283].)

 In reviewing challenges to the constitutionality of legislation, courts must presume that the enactment is valid, and that the Legislature ascertained facts to support its action. (*Dribin* v. *Superior Court* (1951) 37 Cal.2d 345, 352 [231 P.2d 809, 24 A.L.R.2d 864].) Where the validity of a statute depends on a question that is at least debatable, courts properly defer to the legislative judgment. (*United States* v. *Carolene Products* (1938) 304 U.S. 144, 154 [82 L.Ed. 1234, 1242-1243, 58 S.Ct. 778].) If there is a legitimate scientific debate regarding whether marijuana is harmful it follows that the legislative determination that it should be regulated is not without rational basis.

The existence of a debate within the scientific community was not challenged by appellants but was presented in bold face relief by the affidavits and other evidence filed in proper form by both sides. It is not necessary to restate the substance or the detail contained in the affidavits. A taste suffices. Respondent, the moving party, presented the affidavit of a professor of psychiatry at the University of California's Langley Porter Institute in San Francisco. Included was his conclusion that "There is currently an active and sometimes passionate scientific debate...a legitimate debate, as to the relative harmlessness or harmfulness of marijuana." In his opinion sufficient data is not yet available so that a prudent medical scientist could conclude that marijuana is a harmless drug. Cumulative evidence was supplied by the Fifth and Sixth Reports of the Department of Health, Education and Welfare to the United States Congress, entitled Marijuana and Health. On the other side, appellants presented the affidavits of three medical experts. Each was of the opinion that marijuana involves only the most minimal risks to health. Because the affidavits did not in any real sense question the existence of the scientific debate but only the proper conclusion to be drawn from the scientific arguments, the trial court was correct in issuing summary judgment against this equal protection challenge. Still valid is the court's conclusion in *People* v. *Aguiar*, *supra*: "...The facts which we may judicially notice are such that it may be reasonably said that the Legislature is warranted in concluding that the use of alcohol is not as antisocial as the use of marijuana or that the differences inherent in those euphorics reasonably justify differentiation in treatment.

Suffice it to say that in light of present medical attitudes towards marijuana, we cannot say that the proscription against the possession of marijuana is palpably arbitrary and erroneous beyond rational doubt.' (257 Cal.App.2d at p. 605.)

### Cruel and Unusual Punishment

█ The third cause of action advanced by appellants is that enforcement of the marijuana laws subjects them to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution.

That argument was put to rest six years ago by *In re Jones* (1973) 35 Cal.App.3d 531 [110 Cal.Rptr. 765]. The question there was whether *imposition* of a sentence of five years to life for violation of Health and Safety Code section 11531 (sale of marijuana) constituted cruel and unusual punishment. In approaching the problem the court first set forth the ground rules earlier established by the Supreme Court in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921] and in *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880]: ""The Legislature is thus accorded the broadest discretion possible in enacting penal statutes and in specifying punishment for crime, but the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function." [Citations omitted.] [¶] We add that the determination of whether a legislatively prescribed punishment is constitutionally excessive is not a duty which the courts eagerly assume or lightly discharge. Here, as in other contexts, "'mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.'"" (*In re Jones, supra,* 35 Cal.App.3d at p. 534.)

Next, the opinion provided a summary of the three techniques to be used under the teaching of *In re Lynch* in evaluating whether a particular *imposed* punishment meets constitutional muster: "First, the nature of the offense and/or the the offender, with particular regard to the degree of danger both present to society. Second, a comparison of the challenged penalty with punishments prescribed in the same jurisdiction for different offenses which must be deemed more serious. Third, a comparison of the challenged penalty with the punishment prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*Id.,* at p. 535.) We understand our instruc-

tions from the Supreme Court concerning the applicability of the three *Lynch* guidelines to be: use only in situations where a punishment has been imposed.

When a defendant convicted under a section encompassing a wide range of conduct challenges the statute as imposing cruel and unusual punishment, judicial review must await a determination of the proper term fixed in the individual case. Once the term is set, a court can then analyze the constitutionality of the statute applied. (*People v. Wingo* (1975) 14 Cal.3d 169, 183, fn. 14 [121 Cal.Rptr. 97, 534 P.2d 1001]; *People v. Romo* (1975) 14 Cal.3d 189, 193 [121 Cal.Rptr. 111, 534 P.2d 1015].) We cannot say that the unconstitutionality resulting from *any* punishment for such conduct "clearly, positively and unmistakably appears." (*Jones, supra*, 35 Cal.App.3d 531.) Other courts in California and other states have reached the same result. (See, e.g., *People v. Sheridan* (1969) 271 Cal.App.2d 429, 430 [76 Cal.Rptr. 655]; *People v. Cuellar* (1968) 262 Cal.App.2d 766, 769-770 [68 Cal.Rptr. 846]; *State v. Renfro, supra*, 542 P.2d at pp. 369-370; *State v. Conovan* (Me. 1975) 344 A.2d 401, 405; *Commonwealth v. Leis* (1969) 355 Mass. 189 [243 N.E.2d 898, 906].)

### Due Process and Equal Protection

■ Appellants' fourth basis of constitutional attack is that their due process and equal protection rights are violated by the "erroneous, irrational and unreasonable" classification of marijuana as a narcotic.[3] They rely on the Illinois Supreme Court decision of *People v. McCabe* (1971) 49 Ill.2d 338 [275 N.E.2d 407, 50 A.L.R.3d 1149], which concerned an equal protection challenge involving two Illinois statutes: the Narcotic Drug Act and the Drug Abuse Control Act. The former classified marijuana as a narcotic and mandated a 10-year minimum sentence for its sale. The latter, the Drug Abuse Control Act, included

---

[3]Health and Safety Code section 11032 provides in pertinent part: "Whenever reference is made to the term 'narcotics' in any provision of the law outside of [Division 10 of the Uniform Controlled Substances Act], unless otherwise expressly provided, it shall be construed to mean controlled substances classified in Schedules I and II, as defined in this division."

Marijuana is a controlled substance classified in schedule I. (Health & Saf. Code, § 11054, subd. (d) (10).) Accordingly, marijuana is classified as a narcotic under the Health and Safety Code.

California's definition for narcotics, marijuana and other controlled substances are an adoption of the Uniform Controlled Substances Act, presently enacted in 38 other states. (See West's Ann. Health & Saf. Code (1979 supp.) div. 10, p. 23.)

marijuana among hallucinogens and barbiturates and allowed a maximum one-year jail term for the sale of such substances. After fully reviewing the current medical, scientific and sociological data concerning the various substances in both acts the court found that marijuana was improperly classified in the Narcotic Drug Act. It could find no rational basis for the classification "a consequence of which is that one first convicted of the sale of marijuana must without qualification receive a sentence ten times greater than one permitted to be imposed on one convicted for the first time of a sale of drugs under the Drug Abuse Act." (*McCabe, supra,* at p. 413.)

Far from that is the situation here. Unlike the Illinois statutes in *McCabe,* California classifies marijuana with other hallucinogens in schedule I of Health and Safety Code section 11054, subdivision (d). This state does not penalize individuals punished for use or possession of marijuana any more severely than it punishes those involved with other hallucinogens. California affords marijuana offenders special treatment with respect to criminal penalties in comparison to those convicted of crimes involving other controlled substances. (See Health & Saf. Code, §§ 11357-11360.)

Appellants do not contend that the punishment imposed for possession and use of marijuana in relation to other controlled substances violates the constitutional guarantee of equal protection. Rather, their position is that the classification of marijuana as a narcotic is irrational because it "may have significant consequences for persons convicted of marijuana offenses." As examples, appellants offer several Vehicle Code sections imposing sanctions such as suspension or revocation of licensing privileges.[4] With respect to these sections, we find that the Legislature clearly acted rationally. Appellants' own experts seem to agree. For example, Dr. Ungerleider, on the basis of his clinical experience, was of the opinion that driving under the influence of an ordinary social dose of marijuana posed a definite safety hazard.

---

[4]Appellant cites the following Vehicle Code sections:
"Section 12809. The department may refuse to issue or renew a driver's license to any person:...(f) If the applicant is convicted of any offense involving the transportation for purpose of sale, or the transportation for compensation, of a controlled substance under Division 10 (commencing with Section 11000) of the Health and Safety Code, and the commission of such offense involved the use or operation of a motor vehicle. [¶] If, however, the driving privilege of the applicant is on probation for a case related to the use or possession of a narcotic controlled substance, the department may refuse to issue or renew a driver's license to such applicant if the applicant is subsequently convicted of any offense involving the use or possession of a narcotic controlled

*Liberty and Pursuit of Happiness*

■ As a fifth cause of action, appellants contend that the marijuana statutes prohibit their right to liberty and pursuit of happiness in violation of article I, section 1 of the California Constitution. The guarantees of that section are not absolute and do not operate as a curtailment on the basic power of the Legislature to enact reasonable police regulations. (*Ikuta* v. *Ikuta* (1950) 97 Cal.App.2d 787, 789 [218 P.2d 854].) Here appellants have not shown irrational conduct by our lawmakers.

*Waste of Taxpayer Funds*

■ Lastly, appellants, as taxpayers, seek to enjoin the expenditure of tax funds to enforce the challenged marijuana statutes. However, in

---

substance, whether or not the commission of such offense involved the use or operation of a motor vehicle. [¶] The maximum period of time for which the department may refuse to issue or renew a driver's license to any person pursuant to this subdivision shall be three years from the date of conviction..."

"Section 13202. (a) A court may suspend or order that the department revoke in which case the department shall revoke the privilege of any person to operate a motor vehicle upon conviction of any narcotic controlled substance offense as defined in Division 10 (commencing with Section 11000) of the Health and Safety Code when the use of a motor vehicle was involved in, or incidental to, the commission of the offense.

"(b) A court shall order that the department revoke and the department shall revoke the privilege of any person to operate a motor vehicle upon conviction of a violation of Section 11350, 11351, 11352, 11353, 11357, 11359, 11360, or 11361 of the Health and Safety Code when a motor vehicle was involved in, or incidental to, the commission of such offense.

"(c) The period of time for suspension or the period after revocation during which the person may not apply for a license shall be determined by the court, but in no event shall such period exceed three years from the date of conviction." (Amended by Stats. 1972, ch. 1407, § 11, p..3044; Stats. 1974, ch. 1194, § 2, p. 2570.)

"Section 13800. The department may conduct an investigation to determine whether the privilege of any person to operate a motor vehicle should be suspended or revoked or whether terms or conditions of probation should be imposed upon receiving information or upon a showing by its records:...

"(e) That any ground exists for which a license might be refused. The receipt by the department of an abstract of the record of conviction of any offense involving the use or possession of narcotic controlled substances under Division 10 (commencing with Section 11000) of the Health and Safety Code shall be a sufficient basis for an investigation by the department to determine whether grounds exist for which a license might be refused." (Amended by Stats. 1972, ch. 1407, § 13, p. 3045.)

Appellant also cites numerous Business and Professions Code sections (§§ 2384, 4350, 4358, 4361, 5081, 6060, 6061, 8568) to illustrate that marijuana convictions "may also be conclusive evidence of 'unprofessional conduct' within a profession, leading to revocation or refusal to issue or renew a license." However, since these code sections were not mentioned in the complaint or before the trial court, we need not consider them in the equal protection argument raised here on appeal.

order to obtain injunctive relief in an action brought under Code of Civil Procedure section 526a, the taxpayer must establish that the expenditure of public funds which he seeks to enjoin is illegal.[5] (*County of Los Angeles* v. *Superior Court* (1967) 253 Cal.App.2d 670, 678 [62 Cal.Rptr. 435].) Appellants have failed to do so.

The summary judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 20, 1980.

---

[5]Code of Civil Procedure section 526a provides that: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation; who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer; provided, that no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities. [¶] An action brought pursuant to this section to enjoin a public improvement project shall take special precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law."