[Crim. No. 10058. First Dist., Div. Three. May 24, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM NANCE, Defendant and Appellant.

926

## COUNSEL

Kirby L. Boston, under appointment by the Court of Appeal, and William H. Benz for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant

Attorney General, William E. James, Assistant Attorney General, Joyce F. Nedde and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), J.**—Appellant was charged with and found guilty after a trial by jury of violating Penal Code section 459 (burglary) and Penal Code section 448a (arson). The jury also found that appellant was sane at the time of commission of both crimes.

The facts: During the night of October 12, 1970, appellant was driving from Santa Rosa to San Francisco with four other men. The car ran low on gas and the men decided to steal some fuel from the gas pumps at the Marin County Airport. However, the pumps were electrically operated, and they were unable to get any gas. Appellant and three of his companions then broke a window in the airport administration building and entered the premises. Their original purpose was to find the switch and turn on the gas pumps. During the time they were inside, the men stole candy, gum, the emergency transmitter, the tape recorder and the record player. Armstrong, one of the passengers in appellant's car, did not see appellant take anything, but he did see him set fire to the curtains in the company's office.

After his arrest, appellant told Inspectors Melovich and Bridges that as they were leaving he had felt an urge to start a fire and had lit the curtains. He had no idea of starting a fire before he entered the building and didn't know why he had done so. At trial appellant was asked to describe his feelings when he "got the idea to start the fire." To this appellant replied, "I just get excited. . . . Just had the urge to start it. . . . I have also had the feeling to burn things just to see it burn." Appellant stated that he has had that feeling as long as he could remember.

During the insanity phase of the trial, the defense introduced extensive testimony to the effect that appellant had set numerous fires both as a child and while married, and to the effect that the fires had a possible symbolic sexual connotation to appellant. Appellant testified as to the pressures he felt when setting the fire, and the sense of ease he felt immediately afterward. It was also demonstrated that appellant stole almost daily, mostly articles for which he had no use.

Two psychiatrists had examined appellant at the court's request. Dr.

Kenneth Hayworth testified that appellant was sane when the fire was set in that he understood the nature and consquences of his act, and was able to distinguish right and wrong. In the doctor's opinion, appellant had never acted other than of his own volition and was not acting under an "irresistible impulse" when he set the fire. Dr. Jamshid A. H. Bakhtiar testified that appellant was sane when he burglarized the building, but insane when he set the fire because he was acting under an impulse which destroyed his ability to differentiate between right and wrong. Dr. Bakhtiar admitted that appellant could at times set deliberate fires, and he indicated the airport fire could have been deliberate. The doctor stressed the pressures which overwhelmed appellant, suggesting that the setting of a fire was a stress remover.

■ The principal question presented is: May diminished capacity due to a mental defect be raised as a defense to the crime with which appellant was charged?

Since *People* v. *Wells,* 33 Cal.2d 330, 356 [202 P.2d 53], it has been the law in California that evidence of diminished mental capacity whether caused by intoxication, trauma or disease, can be used to show that a defendant did not have a specific mental state essential to the offense charged. The defense was first defined in homicide cases where it is usually involved. (E.g., *People* v. *Castillo,* 70 Cal.2d 264 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Henderson,* 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677].) The effect of allowing a defendant in a homicide case to show that he did not entertain the specific mental state required by the crime charged is to allow a reduction of the charge to a lesser offense. Thus, a defendant incapable of premeditation may be convicted of murder in the second rather than the first degree. (See *People* v. *Wolff,* 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959].) If the defendant could not harbor malice aforethought because of a mental illness or intoxication, the homicide cannot be an offense higher than manslaughter—voluntary manslaughter if the defendant is capable of forming intent to kill and involuntary manslaughter if not. (*People* v. *Mosher,* 1 Cal.3d 379, 389-390 [82 Cal.Rptr. 379, 461 P.2d 659]; see also *People* v. *Conley, supra,* 64 Cal.2d 310, 323-324.) If the incapacity of the defendant reaches a state where he acts unconsciously, a difference has been made between diminished capacity due to voluntary intoxication and that due to other causes. While unconsciousness is usually a complete defense to a criminal charge, in the case of voluntary intoxication it will not completely excuse a criminal homicide although it will allow a reduction to involuntary manslaughter. (*People* v. *Anderson,* 63 Cal.2d 351, 366 [46 Cal.Rptr. 763, 406 P.2d

43]; *People* v. *Coogler,* 71 Cal.2d 153, 170 [77 Cal.Rptr. 790, 454 P.2d 686]; see also *People* v. *Mosher, supra,* 1 Cal.3d 379, 391.)

In nonhomicide cases, the use of the defense of diminished capacity has been questioned on the ground that, contrary to its original purpose, it would furnish a complete defense to criminal responsibility and set up a new test of insanity. (See *People* v. *Rodriguez,* 272 Cal.App.2d 80, 85 [76 Cal.Rptr. 818]; *People* v. *Hoxie,* 252 Cal.App.2d 901, 916 [61 Cal. Rptr. 37].)

Although the availability of the defense in nonhomicide cases has been questioned, the California Supreme Court implicitly ruled in *People* v. *Mosher, supra,* at page 392, that in cases of robbery, rape and burglary, upon a proper showing, a defendant is entitled to jury instructions that defendant's diminished capacity might rebut the specific intent necessary to commit such crimes. This was a case in which the prosecution advanced the felony-murder theory as to these crimes and where the offense could be reduced. The Supreme Court in *People* v. *Graham,* 71 Cal.2d 303, 314 [78 Cal.Rptr. 217, 455 P.2d 153], also approved a diminished capacity instruction given to the jury where defendant was charged with murder and robbery in separate counts, not involving a felony-murder charge. The appellate courts have recognized the defense in cases involving forgery (*People* v. *Gentry,* 257 Cal.App.2d 607 [65 Cal.Rptr. 235]) and battery (*People* v. *Glover,* 257 Cal.App.2d 502 [65 Cal.Rptr. 219]). In all these cases, the defense has been available to negative a specific intent or mental state required by the offense. No case has been cited to us or found where the defense was used in the trial of a crime requiring only a general criminal mens rea. To the contrary, the Supreme Court has recently rejected the defense in the trial of a violation of Penal Code section 4501 which prohibits an aggravated assault by a state prisoner who is not undergoing a life sentence and which does not require a finding of malice. The theory of the defense was that the defendant's use of excessive force to defend himself was caused by uncontrollable rage due to mental defect or disease. (*People* v. *Noah,* 5 Cal.3d 469 [96 Cal.Rptr. 441, 487 P.2d 1009].)

In *Noah,* the Supreme Court rejected the contention that the diminished capacity defense was applicable and stated: "Defendants' novel theory founders on the shoals of Penal Code section 21, which precludes negation of the general criminal intent of section 20 by evidence of any mental defect short of lunacy, idiocy, or insanity. Section 21 makes clear that an otherwise competent defendant who is not insane, a 'lunatic,' or an 'idiot,' is capable of achieving that general criminal intent required by section 20. It provides: 'The intent or intention [of section 20] is manifested by the

circumstances connected with the offense, and the sound mind and discretion of the accused. *All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity.'* (Italics added.) Although the mental conditions of lunacy and idiocy are not necessarily the same as legal insanity [citation], that mental abnormality manifesting itself in conduct which defendants describe as the product of 'irresistible impulse' has never been judicially recognized as either 'idiocy' or 'lunacy.' To the contrary, irresistible impulse has been consistently rejected as a complete defense to crime in this state. [Citations.] As stated in *People* v. *Gorshen, supra,* 51 Cal.2d 716, at page 727, evidence of irresistible impulse 'is received not as a "complete defense" negating capacity to commit any crime but as a "partial defense," negating specific mental state essential to a particular crime.' " (*People* v. *Noah, supra,* 5 Cal.3d 469, 477-478.)

The question before us narrows to a determination whether arson requires a "specific mental state." Cases have explained the mental element of the crime as follows: "It is true that the statutory definition of arson (Pen. Code, § 447a) requires that the act of setting fire to or burning be done maliciously. The word 'malice' imports 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, . . .' (Pen. Code, § 7, subd. 4.) When related to the crime of arson, the word 'malice' denotes nothing more than a deliberate and intentional firing of a building, or other defined structure, as contrasted with an accidental or unintentional ignition thereof; in short, a fire of incendiary origin. . . ." (*People* v. *Andrews,* 234 Cal.App.2d 69, 74-75 [44 Cal.Rptr. 94]; see also *People* v. *Bowman,* 240 Cal.App.2d 358, 386 [49 Cal.Rptr. 772]; *People* v. *Williams,* 19 Cal.App.3d 339, 345 [96 Cal.Rptr. 848].) We have concluded, therefore, that the crime of arson does not require a specific mental state which would permit assertion of the defense of diminished capacity.

Policy reasons weigh in our decision even more strongly than do the technical distinctions between the general mens rea and specific intent. The defense of diminished capacity in a crime such as arson, like the defense of insanity, would be a complete defense to the charge. But unlike the defendant exonerated by virtue of insanity, the pyromaniac would not, under our present system, be subject to compulsory treatment. While there is merit to the reasoning that society's interests would be better served by hospitalizing, rather than imprisoning, the person who is compelled by uncontrollable impulse to set fires, we believe that to be a matter for legislative rather than judicial action.

Assuming that diminished capacity could be raised as a defense to burglary, with which appellant was also charged, we have concluded that the record does not support the contention that the trial court should have in-

structed on the defense *sua sponte* or the contention that defense counsel was incompetent in not raising the defense. No substantial basis for raising the defense as to the burglary charge is revealed. In fact, at the sanity hearing, the psychiatrist testifying for the defense concluded that though appellant was acting without volition when he set the fire, he was not so acting with regard to the commission of the burglary.

■ Appellant also contends that trial counsel was incompetent in not arguing that his confession was the result of being confronted with illegally seized evidence. "The rule is settled that where a confession is induced by illegally seized evidence, the confession is subject to exclusion as fruit of the poisonous tree. [Citations.]" (*People* v. *Johnson,* 70 Cal.2d 541, 545 [75 Cal.Rptr. 401, 450 P.2d 865].) If this point is not brought up for tactical reasons, however, the failure to do so will not furnish a ground for reversal on appeal. (See *People* v. *Reeves,* 64 Cal.2d 766, 773-774 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Garrison,* 246 Cal.App. 2d 343, 350-351 [54 Cal.Rptr. 731]; *People* v. *Cram,* 12 Cal.App.3d 37, 45 [90 Cal.Rptr. 393].)

Trial counsel's approach to the confession was that it was not voluntary because it was made for the purpose of getting medical help. Such an approach would be inconsistent with an argument that he confessed because confronted with the evidence. Furthermore, there are other indications that trial counsel may have felt the latter argument would not aid his chances of success in excluding the confession. The arrest record suggests that appellant's wife consented to the search of the locker; there is no evidence that the police confronted appellant with the radio; the appellant did not confess when first questioned but four days later when he asked to see the police. The latter point is more consistent with a confession made to secure medical help. It is clear that appellant has not made a case for incompetence of counsel on this ground.

■ Appellant's contentions that the corpus delicti of arson and burglary were not established independently of the confession are without merit. The testimony of Armstrong alone who was an eyewitness and participant established the corpus delicti of both crimes. Additionally, there was testimony of an arson investigator that the fire was of incendiary origin and testimony of the owner of the articles stolen from which a burglary could be inferred.

■ Appellant also contends that the court erred in refusing to give an instruction that the intent to steal necessary to commit the crime of burglary is the specific intent to steal from the premises which are the subject of the burglary.

We agree with the trial court's opinion that this instruction would not be a correct statement of the law as applied to this case. *People* v. *Wright,* 206 Cal.App.2d 184 [23 Cal.Rptr. 734], deals with a similar factual situation and correctly states the applicable law. "We consider the true rule to be that within the purview of section 459, Penal Code, the intent to commit larceny or any felony is not confined to an intent to commit the crime in the building which is entered if the intent at the time of entry is to commit the offense in the immediate vicinity of the place entered by defendant; if the entry is made as a means of facilitating the commission of the theft or felony; and if the two places are so closely connected that intent and consummation of the crime would constitute a single and practically continuous transaction." (P. 191.) Here the entry was made to turn on a switch to the gasoline pumps in order to steal gasoline. The act necessary to the theft was to be performed within the premises. In such a situation, it would not be necessary that the gasoline be inside the premises. The jury could not find appellant innocent of burglary under the theory posited by appellant.

■ Appellant's final contention is that the court erred in permitting court-appointed psychiatrists to state that appellant must prove his insanity beyond a reasonable doubt.

The psychiatrist appointed by the court to examine appellant and determine his mental condition testified at the hearing on appellant's sanity that "a person is presumed to be sane until they are proven beyond a shadow of a doubt that they are not." As respondent concedes, the accused must only prove the fact of his insanity by a preponderance of the evidence. (Evid. Code, § 522; *People* v. *Flanagan,* 275 Cal.App.2d 966, 969 [80 Cal.Rptr. 408].)

The court correctly instructed on the proper standard of proof. The jury was also instructed that the court alone could state the law applicable to the case. In view of these instructions, had the jury interpreted the psychiatrist's statement as other than a personal standard of evaluation, it is not likely they would have been confused. Although the remark was improper, no reversible error resulted in a failure to interrupt at that point and correct the doctor's impropriety.

The judgment is affirmed.

Draper, P. J., and Caldecott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1972.