[No. C000450. Third Dist. Feb. 8, 1989.]

In re STONEWALL F. et al., Persons Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
STONEWALL F. et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*See footnote 1, *post,* page 1139.

1056

**COUNSEL**

Dennis Michael O'Reilly, under appointment by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, J.**—Stonewall F. and Jimmy H., minors, appeal from orders making them wards of the juvenile court, predicated upon findings that in intentionally setting a fire to a pile of leaves near a school building, which spread to the structure, they committed arson—the wilful and malicious burning of a structure. (Pen. Code, § 451.) In the published portion of this case[1] we conclude that, since the trial court found that the minors did *not* intend by setting fire to the leaves to cause the burning of the school, the conclusion that they committed arson is infirm. We will modify the judgment to delete that finding and to substitute the lesser included offense of Penal Code section 452, subdivision (c),[2] the unlawful burning of a structure, and, as modified, affirm the judgment.

FACTS

On June 5, 1984, at 4 a.m., a fire was reported at the Zamora School in Yolo County. Police and firefighters responded. The police found a door on the northeast corner of the school ajar. When Harry Bobb of the Woodland Fire Department arrived he found a large fire that appeared to be concen-

---

[1] The Reporter of Decisions is directed to publish the opinion except for parts IV through VI of the Discussion.

[2] All further references to sections are to the Penal Code, unless otherwise designated.

trated in the multipurpose room. Bobb and another firefighter rounded the southeast corner of the school with a firehose. Fire appeared through all of the windows of the door on the south wall of the multipurpose room. They advanced under the covered breezeway play area adjoining the south wall on the southwest corner of the school. A rock facade covered a stemwall extending from the south wall of the school in the northwest corner of the covered play area. Adjacent to the stemwall Bobb saw a portion of the exterior redwood fascia boards had begun to burn. Just to the north of the stemwall the roof had collapsed.

In the course of fighting the fire Bobb was able to see there was also a great deal of fire in the library area to the east. However, the fire had not yet penetrated the roof of the library. The fire was finally put out around 7:30 that morning. In the interim the school suffered extensive damage. Inter alia, the library roof and the roof over the breezeway collapsed.

Bobb assisted in the investigation of the fire over the next several days. He assisted in removal of debris. Under the direction of the senior fire investigator Bobb and others cleared debris, moving from the areas of least damage to greatest damage. They observed the nature of the damage and conducted certain tests. Numerous photographs were taken as the debris removal progressed. The wooden post inside the stemwall was partially destroyed and this weakened the adjacent wall. On June 7, 1984, the investigators were removing the adjacent ceiling to increase safety when the wall and the post collapsed. The post was smashed in the collapse. The investigators found indications of some type of fluid containing something in the nature of methanol along the south wall of the library area.

In mid-July Eric Garrett telephoned Stan Mouser, the police officer assigned to investigate the Zamora School fire. Garrett said that Jimmy H. had told him "they" had lit a fire at the school using gasoline on the night it burned down. Mouser discounted this information when he learned that gasoline had been eliminated as an accelerant in the fire. However, Garrett told Mouser in September that alcohol had been used and as a result Mouser interviewed Jimmy H. and Stonewall F.

Both minors ultimately admitted that on the evening of June 4th they went to Zamora School, made a pile of leaves and grass in the breezeway near the stemwall and set it afire. Stonewall F. told Mouser they had smoked marijuana and then lit the fire "on [the] brick wall" in the corner near the doors to the multipurpose room. He said this occurred about 6 p.m. They gathered the material elsewhere and brought it to the place they set afire. The fire was "kinda gone and kinda not" when they walked away.

Mouser asked why they had done it and Stonewall F. said: "It's just a bunch of crazy boys."

Jimmy H. told the fire investigator they "were going to set a fire" in the corner of the stemwall in the play area. He said they were "afraid it was going to catch." For that reason they moved it further away. The investigator examined the concrete at the location that Jimmy H. had indicated was the original intended site and found staining. No other stains were found in the concrete elsewhere in the covered play area.

Jimmy H. made admissions to other minors who testified. He said he thought he was responsible for the school burning down. He said he was "wasted" at the time of the grass fire incident. Stonewall F. also made admissions to other minors who testified. He said he burned the school down. He said the grass fire was by the wall and by the brick wall. He said he and Jimmy H. "got stoned" on the evening of the incident. He said they left without putting out the fire.

### DISCUSSION

### I.

The trial court found that the minors intentionally set fire to a pile of leaves in the breezeway near a wall of the Zamora School in Yolo County, which spread to the school building, resulting in substantial damage to the structure. The court further found that the minors did *not intend* by that wrongful act to burn the school structure. The court said: "[T]here was an intentional firing of the grass and leaves debris on the structure of the Zamora School, which was the intention to do a wrongful act, which resulted in the requisite burning to the building itself." It further found that the "fire was set recklessly within the meaning of 450(f) of the Penal Code" because the minors had consciously disregarded a substantial and unjustifiable risk that the school would catch fire, which risk was a gross deviation from the standard of conduct of a reasonable person in that situation, the standard of culpability required for commission of the offense of unlawfully causing a fire. (§ 452.) Notwithstanding this finding, the court concluded that the minors had committed the more serious offense of arson. (§ 451.)

### A.

The elements of two separate offenses are merged by the trial court's decision. Arson is defined to have occurred when a person "willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land or property." (§ 451.) Unlawfully causing a fire is defined to

have occurred when a person "recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." (§ 452.) As to each offense, additional elements are employed to grade its seriousness and punishment.[3]

The elements of sections 451 and 452 are identical in all material respects, save one,[4] except for their standards of culpability[5] and penalties. Accordingly, their standards of culpability cannot be the same. "[T]he Legislature has, by so grading offenses, declared its purpose that separate crimes should be treated, in fact, as different crimes." (*People* v. *Brady* (1987) 190 Cal.App.3d 124, 132 [235 Cal.Rptr. 248]; see also *People* v. *Spann* (1986) 187 Cal.App.3d 400 [232 Cal.Rptr. 31]; cf. *People* v. *Irwin* (1984) 155 Cal.App.3d 891, 897-900 [202 Cal.Rptr. 475].)

Nonetheless, the trial court employed the standard of culpability (recklessness) of the *less* serious offense (§ 452) in finding that the minors had committed arson (§ 451). Notwithstanding the detailed consideration and exemplary concern with which the trial court performed its judicial task, this perplexing result is unsupportable.

## B.

At the outset the problem can be viewed as a variation of the ancient problem of ends and means. (See generally, 2 Dewey, Theory of Valuation, The Continuum of Ends-Means (1969) Internat. Encyclopedia of Unified Science.) "An intent is forward looking; it is the end in view, the object to be accomplished by the action taken, which is its criterion." (*People* v. *Brady, supra,* 190 Cal.App.3d at p. 136, fn. 4.) What was the end in view of

---

[3] Without more, the arson of a structure or forest land is made punishable by imprisonment for two, four, or six years. (§ 451, subd. (c).) The penalty is increased if the arson "causes great bodily injury" (§ 451, subd. (a); five, seven or nine years) or "causes an inhabited structure or inhabited property to burn (§ 451, subd. (b); three, five, or eight years). The penalty is decreased for the arson of property (§ 451, subd. (d); 16 months, two, or three years).

[4] There is one difference in the definitions of arson and unlawfully causing a fire which bears on their distinct standards of culpability. Arson, by virtue of section 451, subdivision (d), applies to the burning of personal property, but not to one's own property "unless there is an intent to defraud or there is injury to another person or another person's structure, forest land or property." The comparable provision of the unlawful burning statute, section 452, subdivision (d), deletes "intent to defraud." This latter omission reflects the sensible view that one cannot recklessly defraud someone in this context and is consistent with the addition of "defraud" to the definition of "maliciously" applicable only to arson. (See § 450, subd. (e), enacted at the same time as new §§ 451 and 452 in Stats. 1979, ch. 145, § 6, p. 338.)

[5] The term "standard of culpability" is used in place of mens rea or scienter or mental state as a neutral description of the disparate concepts which measure the element of criminal culpability. (Cf. § 20; 1 Witkin, Cal. Crimes (1963) § 52, p. 56; see Hall, General Principles of Criminal Law (2d ed. 1960) pp. 70-77; Model Pen. Code and Commentaries, § 2.02, com. at pp. 229-253; Fletcher, Rethinking Criminal Law (1978) § 6.2.1., pp. 396-401; 1 LaFave & Scott, Substantive Criminal Law (1978) § 3.4.)

the minors' conduct? If it was the burning of the school, of which the burning of the leaves is a means to that end, the end in view was setting fire to the school itself. But if the end in view was (just) the burning of the leaves, notwithstanding that such action caused the school to burn, what was a means in the first hypothetical example became an end.[6] As will become clear, the distinction between willful and malicious conduct and reckless conduct plumbs this line of demarcation.

C.

What precedents might have suggested to the trial court that recklessness had been grafted onto the tree of willful and malicious conduct? By way of answer, we need not reconcile the muddled views of those jurisdictions which have sought to explicate the common law of arson,[7] for California has set a distinctive course.

---

[6] The relationships of ends, means, causes and knowledge can vary considerably. Professor Kenny charts 16 possible relationships involving the circumstance in which an agent does A thereby causing B, five of which, involving the doing of A intentionally, are of interest here. (See Kenny, Intention and Purpose in Law, Essays in Legal Philosophy (1968) pp. 151-154.) "1. An agent knows he is doing A, wants to do A, knows that he is doing B by doing A, and wants to do B. . . . [¶] 2. The agent knows that he is doing A, knows that he is doing B by doing A, and wants to do B, but does not want to do A . . . . [¶] 3. The agent knows he is doing A and wants to do A and knows he is doing B by doing A but does not want to do B. . . . [¶] 5. The agent knows that he is doing A and wants to do A and wants to do B, but though by doing A he is doing B he does not know this. . . . [¶] 9. The agent knows and wants himself to be doing A, but neither knows nor wants himself to be doing B by doing A." In all of these cases it can be said that the agent intends to do A. The ordinary cases of doing A in order to do B, i.e., intending to use A as a means to B, are 1. and 2. Cases 3 and 5 subsume cases in which the common law ascribes an intent to do B to the agent. (See fn. 7, *post.*) Case 9 leads to the problems involving recklessness.

[7] At common law, arson was the wilful and malicious burning of the dwelling of another. (See e.g., *In re Bramble* (1947) 31 Cal.2d 43, 48 [187 P.2d 411]; Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 273-285.) Blackstone located the standard of culpability in the term "malicious"; arson "must be a *malicious* burning; otherwise it is only a trespass; and therefore no negligence or mischance amounts to it." (4 Blackstone, Commentaries 220.) Professor Perkins, relying upon English cases of 1877 and 1882, suggests that "the state of mind which constitutes . . . common-law arson . . . is either an intent to burn the dwelling of another, or an act done under such circumstances that there is obviously a plain and strong likelihood of such a burning." (Perkins & Boyce, *supra,* at pp. 276-277; see also Curtis, The Law of Arson (1936) § 62, pp. 78-80.) This phrasing suggested to some commentators a fusion of intentional and reckless standards of culpability. Thus 3 Wharton's on Criminal Law (14th ed. 1980) section 348 at page 270, says: "At common law, the act of burning must be 'wilful and malicious.' The 'intentional' burning of the dwelling house of another is obviously sufficient. Although a defendant who 'recklessly' burns the dwelling house of another is acting 'maliciously', he is not acting 'wilfully' in the ordinary sense of the term. However, as a result of case-law development over the years, the meaning of the term 'wilfulness' has become sufficiently broad to embrace the notion of 'recklessness.' Thus, the 'reckless' burning of the dwelling house of another may amount to arson, as where the defendant in burning his own house or other property on a windy day causes the dwelling house of another, which is in close proximity thereto, to be burned." (Fns. omitted.) This conclusion is not universally

The common law of arson, insofar as it might have incorporated recklessness as a standard of culpability, did not find its way into California law. The statutory history of the law of arson illuminates this point. The law of 1850 provided that it was arson for any person to "wilfully and maliciously burn, or cause to be burned" specified kinds of (habitable) structures. (Stats. 1850, ch. 99, § 56, pp. 234-235; see Bolton, *Arson in California* (1949) 22 So.Cal.L.Rev. 221; Bolton, *Arson in California: Part II* (1962) 35 So.Cal.L.Rev. 375.) However, the same law made it a less serious offense to "wilfully and maliciously *set fire to*" such a structure "*with intent* to burn or destroy the same . . . ." (Stats. 1850, ch. 99, § 57, italics added.) This latter offense contemplates that setting fire to a structure is the knowing means to the end of burning or destroying it. Since this presupposes the voluntary act of "setting fire to" the structure, the term "wilful and malicious" must, at the least, mean voluntarily, or in this context intentionally. What is explicitly presupposed in the lesser offense is implicitly presupposed in the greater offense; thus the *end-in-view* of arson is the burning or destroying of the target structure.

This meaning was again manifest in the 1872 change in the law. It defined arson as the "the willful and malicious burning of a building, with intent to destroy it." (Stats. 1872, Pen. Code, § 447; *People* v. *Mooney* (1899) 127 Cal. 339, 340 [59 P. 761]; *People* v. *Fong Hong* (1898) 120 Cal. 685, 687 [53 P. 265].) Since "burning" included the partial burning of the structure (see *People* v. *Haggerty* (1873) 46 Cal. 354), the "wilful and malicious" burning of a structure could be arson only if it was the means to the end of destroying it. As with the law of 1872, the necessary implication is that "willfully and maliciously" means the voluntary (hence in this context-intentional) act of burning the structure to be destroyed.

shared. Volume 6A of Corpus Juris Secundum suggests that for culpability there must be an "intent to burn *some* structure," invoking the doctrine of transferred intent. (Arson, § 6, p. 223; italics added.) And 5 American Jurisprudence Second suggests that in the absence of a statute requiring intent to destroy the subject property the cases are not in agreement upon the need for intent (Arson and Related Offenses, § 10, pp. 807-808).

We think that *Wharton*'s view is incorrect in that it confuses recklessness with that form of legal intention in which the culpable party "knows that his conduct is *substantially certain* to cause the result, whether or not he desires the result to occur." (LaFave & Scott, Substantive Criminal Law, *supra,* § 3.7, p. 336, original italics, fn. omitted.) "Some legal theorists, Bentham among them, have recorded this divergence by distinguishing (as '*oblique*' intention), mere foresight of consequences from '*direct* intention' where the consequences must have been contemplated by the accused not merely as a foreseen outcome but as an end when he set out to achieve, or as a means to an end, and constituted at least part of his reason for doing what he did." (Hart, Punishment and Responsibility, pp. 120-121.) The paradigm arson case exemplifying an "oblique" intention occurs when the culpable party burns his own house knowing, by virtue of its proximity, that his neighbor's house is also certain to burn. (See *People* v. *George* (1941) 42 Cal.App.2d 568, 571-572 [109 P.2d 404] and the discussion of it in the text; cf. *People* v. *Hiltel* (1901) 131 Cal. 577 [63 P. 919].) It is the *knowledge* of this *near certain* causal consequence which provides a major distinction between this form of intention and recklessness.

"[I]ntent to destroy" was deleted from the definition in the reformulation of the arson offenses in 1929. (Stats. 1929. ch. 25, § 6, p. 47.) This change did not necessarily signal a broadening of the reach of the offenses to reckless conduct. It resulted from the adoption of the Model Arson Law, proposed by the National Board of Fire Underwriters as a uniform law for the states (See *Bolton, supra,* 35 So.Cal.L.Rev., at p. 380, fn. 27), which broadened the arson law to encompass the end in view of partially burning a structure. (Cf. *People* v. *Haggerty, supra.*)

The California cases which preceded the present bifurcated treatment of sections 451 and 452, uniformly said, with respect to arson, that " ' "malice" denotes . . . a *deliberate and intentional* firing of a building ([or other such structure]) . . . as contrasted with an accidental or unintentional ignition' " (*People* v. *Tanner* (1979) 95 Cal.App.3d 948, 955-956 [157 Cal.Rptr. 465], italics added; see also *People* v. *Williams* (1971) 19 Cal.App.3d 339, 345 [96 Cal.Rptr. 848]; *People* v. *Bowman* (1966) 240 Cal.App.2d 358, 387 [49 Cal.Rptr. 772]; *People* v. *Andrews* (1965) 234 Cal.App.2d 69, 75 [44 Cal.Rptr. 94]); to wit, a fire of "incendiary origin" (*People* v. *Clagg* (1961) 197 Cal.App.2d 209, 212 [17 Cal.Rptr. 60]; *People* v. *Hays* (1950) 101 Cal.App.2d 305, 311 [225 P.2d 600]; *People* v. *Sherman* (1950) 97 Cal.App.2d 245, 249 [217 P.2d 715]; *People* v. *Cape* (1947) 79 Cal.App.2d 284, 289 [179 P.2d 426]; *People* v. *Kessler* (1944) 62 Cal.App.2d 817, 822-823 [145 P.2d 656]; *People* v. *Patello* (1932) 125 Cal.App. 480, 482 [13 P.2d 1068]; cf. *People* v. *Saunders* (1910) 13 Cal.App. 743, 747 [110 P. 825]), viewed (naturally) as intentional (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 451 [99 Cal.Rptr. 313, 492 P.2d 1] ["intentional (incendiary) cause"]; cf. *People* v. *Nance* (1972) 25 Cal.App.3d 925 [102 Cal.Rptr. 266]). None of these cases inquired into the statutory definitions of wilfully and maliciously. This led one commentator to the acid observation that: "However else the Legislature modifies the sections relating to arson it seems to hold tenaciously to the common law favorites 'willfully and maliciously.' Perhaps this is not in any way deleterious for the courts do not waste time attempting to define these terms, but instead scrupulously overlook them and are satisfied if they find that the act of burning was *intentionally* done." (*Bolton, supra,* 22 So.Cal.L.Rev. at pp. 230-231, original italics.)[8]

---

[8] The penchant for conclusory assertion characterizes two cases which peripherally bear on the issue tendered in this case.

In *People* v. *Nance, supra,* 25 Cal.App.3d 925, the court concluded that, although the doctrine of diminished capacity applies to specific intent crimes, arson is not one of them. *People* v. *Hood* (1969) 1 Cal.3d 444, 456 [82 Cal.Rptr. 618, 462 P.2d 370] characterizes an intention as general "[w]hen the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence . . . ." Whether or not the court in *Nance* had this point in mind is unclear for *Hood* is not discussed. The court reasoned (with respect to former section 448a) that arson requires that the act of setting fire to or burning a structure be done maliciously, maliciously "denotes nothing

We have found only one case that expressly addresses the issue of means and ends. In *People* v. *Tanner, supra,* the issue was whether, under former section 448a, the burning of a bed was an end in itself or just the means by which the defendant set fire to her house. The court found substantial evidence in support of the latter conclusion, saying: "defendant urges that there was no evidence demonstrating that she intended to burn the house rather than just the bed [in the house]. It was shown that the fire on the bed was started by deliberate application of an open flame to the bed clothes, an act from which it could be inferred that the bed was intended to be used as a torch to set the building on fire." (*Id.,* 95 Cal.App.3d at p. 956.)

Whatever meaning might be derived from this history, the semantic questions are settled by the unitary enactment of sections 451 and 452. The common law impulse to broaden "wilful and malicious" to cover reckless burning was doubtless fueled by the desire to preclude exculpation of highly culpable conduct. That consideration is entirely obviated by the separate treatment of these standards of culpability in sections 451 and 452.

## II.

Section 451 was enacted as part of Statutes of 1979, chapter 145. The act created both sections 451 and 452. As related, they are, with the exception noted, the same in all material respects save penalty structure and culpability standard. (See fn. 4, *ante.*) With respect to the standard of culpability, it is arson if a person "willfully and maliciously sets fire to or burns or causes to be burned . . . any structure . . . ." (§ 451.) By contrast, it is a lesser offense if a person "recklessly sets fire to or burns or causes to be burned, any structure . . . ." (§ 452.) Whatever else may be said of these provi-

---

more than a deliberate and intentional firing of a building", "therefore, that the crime of arson does not require a specific mental state which would permit assertion of the defense of diminished capacity." (*Id.,* at p. 930.) We are not called upon to determine whether this reasoning makes sense.

In *People* v. *Green* (1983) 146 Cal.App.3d 369 [194 Cal.Rptr. 128], the defendant was convicted of two counts of arson in the burning of a house and the contents (a car) of a carport located immediately beneath the house. The defendant argued that, notwithstanding that he could be found guilty of arson for the burning of the house, the burning of the car "should be reduced to a violation of . . . section 452 [unlawful burning] because the burning was 'reckless' and not 'willful and malicious' as required by section 451." (*Id.,* at p. 379, fn. omitted.) The court answered with the cryptic and unsupported assertion that "the fire was set 'willfully and maliciously,' and the fact that some of the resulting damage may have been unintentional is irrelevant." (*Ibid.*) That is not a satisfactory answer. The separate charge of arson of the automobile must fulfill the culpability standard of arson. It could be argued that the intentional burning of a house necessarily carries with it the ancillary intention to burn its contents. The car was a content of the house by virtue of the physical relationship of the carport to the house. (Cf. fn. 4, *ante*; *People* v. *George, supra,* 42 Cal.App.2d at pp. 571-572; cf. 6A C.J.S., Arson, § 6, p. 224; cf. 1 Witkin, Cal. Crimes (1963), § 61.) We have no occasion to resolve this issue.

sions, they explicitly distinguish reckless from wilful and malicious conduct. That distinction is further embodied in the definitions in section 450, adopted as part of the enactment of sections 451 and 452. (Stats. 1979, ch. 145.)

■ Subdivision (e) of section 450 says that " 'Maliciously' imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." The purposes specified in the first clause (before the disjunctive "or"), vex, defraud or annoy, derive substance only by relation to the wrongful acts which complete the substantive elements of the offense, to wit, "sets fire to or burns or causes to be burned . . . any structure" etc. Although the accompanying terms "wish to vex, defraud, annoy or injure," a part of the prior definition of "maliciously" (§ 7, subd. 4), have not been utilized in the arson cases, they implicitly carry with them the intention to do the act condemned, i.e., set fire to, burn etc., because an act done with such a "wish" to vex, annoy, injure or defraud implicitly requires that the act accomplished be done for the purpose of accomplishing such ends. Whatever residual ambiguity inheres in this clause[9] is resolved both by the second clause, next considered, and by the conjunctive requirement of wilfullness.

Thus, with respect to the second clause, "intent to do a wrongful act," we can complete the syntax of the definition by substitution of the language of the wrongful act, such that arson requires "an intent to" "set[] fire to or burn[] or cause[] to be burned, any structure [etc.]." (See *People* v. *Irwin, supra,* 155 Cal.App.3d 891, the relation of intent to wrongful act is particular to the wrongful act defined by the the offense.) By so parsing the language, the end in view of the arson statute is revealed as the accomplishment of the acts condemned, e.g., the burning of a defined structure, etc. The addition of the term "willfully" amplifies this construction.

"Willfully" is not separately defined in section 450, which specifically applies to arson. It is to be found in the general definitions of section 7, subdivision 1, as "when applied to the intent with which an act is done simply a purpose or willingness to commit the act . . . ." Applied to arson, the intent is a purpose or willingness to commit the act of setting fire to or burning or causing to be burned a defined structure, etc. The end in view is the accomplishment of those acts.

The trial court relied upon *People* v. *Peabody* (1975) 46 Cal.App.3d 43 [119 Cal.Rptr. 780], which applied the term "wilfully," as defined in section 7, to the charge of wilfull child endangerment. The court noted that section

---

[9] As we have pointed out (see fn. 4, *ante*), the term "defraud," added to the definition of "maliciously" made specifically applicable to arson, (§ 450, subd. (e); cf. § 7, subd. 4) serves in part to distinguish the culpability states of arson and unlawful burning.

7, subdivision 1 defines " 'wilfully' . . . as simply a purpose or willingness to commit the act and does not require any intent to injure another." (*Id.,* at p. 46.) So applied that meant an intent to place the child in a situation in which its person or health was in fact endangered. *Peabody* does not govern this case. The section 7 definition is entirely dependent upon the act to which "wilfull" is appended. The required intent is an intent to do just that to which the term wilfull is applied. Its significance therefore is wholly dependent upon the grammar of the specific offense in which the term is employed. (See also Hall, General Principles of Criminal Law, *supra,* p. 142 ["It is evident that there must be as many *mentes reae* as there are crimes. And whatever else may be said about an intention, an essential characteristic of it is that it is directed towards a definite end."]) Arson is not willful building endangerment; it is the willful burning of a structure.

The term "willfully and maliciously," as applied to the wrongful acts of arson, explicitly means an intent to set fire to or burn or cause to be burned, any structure. These are the acts condemned and hence the ends in view to which the culpability standard is directed. ■ That the means to this end is wrongful conduct which may be causally distant from the proscribed act, as in this case where the burning of the structure is caused by an act (here the burning of leaves) which leads to the burning of the structure, does not transform the *object* of the intent into the doing of that which initiates the causal chain. To do so would effectively move recklessness into the ambit of intent and thereby obliterate the distinction embodied in the separate offenses of arson and unlawfully causing a fire. That *some* unintended consequences may attend the offense of arson is specifically recognized in the subdivisions of section 451, which partially grades culpability by the *causal consequences* of the arson.

■ The offense of unlawfully causing a fire is principally distinguished from arson by the culpability standard of recklessness. " 'Recklessly' means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." (§ 450, subd. (f).)[10]

---

[10]This definition of recklessness derives from the Model Penal Code. (See Model Pen. Code, *supra,* §§ 2.02, 2.08.) (For a detailed and insightful analysis of the Model Penal Code definition of recklessness, see Treiman, *Recklessness and the Model Penal Code* (1981) 9 Am.J.Crim. Law, p. 281.)

Knowledge of the consequences of one's acts does enter into this measure of recklessness, though in a wholly different way than is to be found in the concept of intention. (Cf. *People* v. *Rogers* (1985) 172 Cal.App.3d 502 [217 Cal.Rptr. 809].) As defined by section 450, subdivision (f), to be reckless requires that the actor be "aware of [i.e., *know*] and consciously disregard[ ] a substantial and unjustifiable risk" that his conduct will set fire to a structure. The statute independently requires that "the risk" be such that disregard "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

■ The manifest inference to be drawn from the fact that the offense of unlawfully causing a fire employs the culpability standard of recklessness is that the offenses listed in section 451 require a culpability standard transcending recklessness. ■ ■ Since recklessness, as defined, entails the subjective appreciation (i.e., by the defendant) of a substantial and unjustifiable risk amounting to a gross deviation from the reasonable standard of conduct, the only candidate for higher culpability is the culpability standard we call intentional. (Cf. *People* v. *Hooper* (1986) 181 Cal.App.3d 1174 [226 Cal.Rptr. 810]; see *People* v. *Watson* (1981) 30 Cal.3d 290, 296-297 [179 Cal.Rptr. 43, 637 P.2d 279]; Model Pen. Code & Commentaries, *supra,* com. to § 2.02, pp. 227-244; Hall, General Principles of Criminal Law, *supra,* pp. 105-146.)

■ A statute is passed as a whole and must be viewed as animated by one connected purpose. (See e.g. 2A Sutherland, Statutory Construction (4th ed. 1984) § 46.05.) ■ From the singular context of the joint enactment of sections 450-452, it is evident that the culpability standard required by section 451 must transcend recklessness. To "willfully and maliciously" cause the burning of a structure under section 451, subdivision (c) must mean that the burning of the structure is the end in view of the wrongful conduct, to wit intended.

### III.

Since the trial court as trier of fact found that the minors did not intend to burn the school structure, it could not lawfully find they violated section 451, subdivision (c), as alleged in the petitions. That judgment must be reversed. ■ It does not follow that the trial court erred in failing to grant the minors' motion for dismissal under Welfare and Institutions Code section 701.1.

Section 701.1 says that dismissal shall be ordered "if the court, upon weighing the evidence then before it, finds that the minor is not a person described by Section 601 or 602." The provision is implicitly limited by the

requirement that the description must be one alleged in the petition. (See *In re Robert G.* (1982) 31 Cal.3d 437 [182 Cal.Rptr. 644, 644 P.2d 837].) Here, the minors did not violate Penal Code section 451, subdivision (c), the offense explicitly alleged in the petition. However, if they were found to have violated any lesser offense necessarily included in the charged offense, dismissal should be denied since the lesser offense was one also alleged in the petition. (See *People* v. *Wong* (1973) 35 Cal.App.3d 812, 828 [11 Cal.Rptr. 314]; *In re Man J.* (1983) 149 Cal.App.3d 475, 482 [197 Cal.Rptr. 20]; cf. *In re Kent W.* (1986) 181 Cal.App.3d 721 [226 Cal.Rptr. 512]; see generally *In re Robert G., supra,* 31 Cal.3d at pp. 440-441.)

Here the trial court, in denying the motion to dismiss, implied that one basis for its action was a lesser included offense under section 452. The parallel provisions of section 452 are viewed in the case as necessary lesser included offenses of their counterparts under section 451. (*People* v. *Hooper, supra.*) As related, recklessness, as defined in section 450, is distinguished from unjustified intentional conduct solely by the *additional* circumstance of intentionality. Since the provisions of sections 451 and 452 are identical save this distinction in the culpability standard of the offender, the 452 provisions are necessarily included lesser offenses. Hence, the trial court was correct, in view of its factual conclusions, in finding the minors to be persons described by section 602 as alleged in the petition. It follows that it was not error to deny the motions to dismiss.

■■ However, this examination of the minors' contention necessarily impugns the trial court's ultimate finding that they violated section 451, subdivision (c). That component of the judgment is incorrect and we will effect an appropriate modification to reflect the appropriate finding of violation of the lesser included offense, section 452, subdivision (c). We will effect the modification because there is a future potential for prejudice to the interests of the minors. (See Witkin, Cal. Criminal Procedure (1963) § 730.) However, after a review of the entire record, we do not believe there is any prospect that this nominal discrepancy influenced the disposition phase of the proceedings at trial. Hence, there is no warrant for remand.

IV.-VI.*

. . . . . . . . . . . . . . . . . . . .

VII.

■ The minors contend that the trial court erred in denying their motion to dismiss the petition under Welfare and Institutions Code section

*See footnote 1, *ante,* page 1057.

782. Section 782 provides that a sustained petition may be dismissed: "if the court finds that the interests of justice and the welfare of the minor require such dismissal, or if it finds that the minor is not in need of treatment or rehabilitation." The minors suggest that denial of the motion was an abuse of discretion because of the trivial nature of their transgression, the perceived sufficiency of the pendente lite restrictions on their liberty, and because less drastic means than adjudication of wardship were available as a response to the minor's conduct. The assessment of the need for wardship is assigned to the discretion of the trial court. The misbehavior of the minors in this case was dangerous to property and life and we cannot fault the decision that wardship was appropriate. We find no abuse of that discretion on this record.

## DISPOSITION

The judgment is modified to delete the finding that the minors violated section 451, subdivision (c) and to substitute in lieu thereof the finding that the minors violated section 452, subdivision (c). As so modified, the judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.